**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| MIN TANG, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Case No. SAG-21-2739 |
| | * | |
| XAVIER BECERRA, | * | |
| Secretary, United States Department of | * | |
| Health and Human Services, | * | |
| | * | |
| Defendant. | * | |
| | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

<u>**MEMORANDUM OPINION**</u>

Dr. Min Tang ("Plaintiff") filed this suit against Xavier Becerra, the Secretary of the United States Department of Health and Human Services ("Defendant"), in his official capacity, alleging claims under Title VII of the Civil Rights Act of 1964. Plaintiff asserts that her former supervisors at the Food and Drug Administration ("FDA") subjected her to a series of retaliatory employment actions after she filed administrative complaints alleging discrimination based on her race and national origin. Discovery has concluded. Currently before the Court is Defendant's motion for summary judgment. ECF 36. This Court has reviewed the motion, along with the associated briefing and exhibits. ECF 41–43, 46–47. For the reasons set forth herein, Defendant's motion will be GRANTED.

## I.    FACTUAL BACKGROUND

Plaintiff, an Asian woman born in China, started working as a microbiology reviewer for the FDA's Division of Manufacturing and Production Quality in August, 2010. ECF 43-6 at 3.[1] Plaintiff's job was to assess the proposed manufacturing processes of new drug applications from

---

[1] For all pincites, this Court uses the ECF page numbers in the header at the top of the page.

a microbiology product quality perspective. *Id.* at 4. She was interviewed for the job by multiple supervisors, including Dr. Patricia Hughes, who opposed her hiring but later became her team leader and first-level supervisor. *Id.* at 3, 6. Plaintiff and Hughes had a contentious relationship from the beginning. ECF 36-3 at 129:17–23. Hughes found Plaintiff argumentative and unwilling to accept criticisms or incorporate changes into her work. ECF 43-6 at 8. Plaintiff received a score of "minimally successful" in her 2011 midyear and annual performance reviews. *Id.* at 9.

Another issue arose during this initial period: Plaintiff complained that she was not hired at a GS-13 pay grade level, even though the online job posting advertised that level. *Id.* at 5–7. Plaintiff filed her first complaint with the U.S. Equal Employment Opportunity Commission ("EEOC") in 2011, alleging that Hughes harassed her and that the FDA discriminated against her when it failed to promote her to GS-13 and when it rated her as "minimally successful." ECF 41-2 ¶ 5. She filed a second EEOC complaint in 2013, alleging continuing discrimination and retaliation by her supervisors. *Id.* ¶ 9.

From September, 2012 to January, 2015, Dr. Peter Qiu was Plaintiff's first-level supervisor and Dr. J. David Doleski was Plaintiff's second-level supervisor. *Id.* ¶ 7. During these years, Plaintiff submitted her work assignments on time, *id.*, and received "fully successful" performance ratings on her annual reviews, ECF 43-6 at 13–14. She did, however, receive a letter of reprimand in September, 2014, for screaming at Qui while he was providing feedback on her work and for not reporting to a scheduled one-on-one meeting. ECF 36-14. After the first letter of reprimand, Plaintiff reported experiencing anxiety and depression from the stress of her work environment and was granted intermittent medical leave. ECF 41-2 ¶ 10. She received a second letter of reprimand in June, 2015, for not providing information required for requesting overtime hours. ECF 36-15.

In January, 2015, following a reorganization, Dr. John Metcalfe became Plaintiff's first-level supervisor and Dr. Lynne Ensor became Plaintiff's second-level supervisor. ECF 41-9 at 5:7–16. Plaintiff submitted all her assignments on time until April, 2015, when Hughes again replaced Metcalfe as Plaintiff's first-level supervisor. ECF 41-10; ECF 42-3. Upon learning that Hughes would be assigned to her branch, Plaintiff asked Ensor to detail her to another branch because of her past difficulties with Hughes and her ongoing EEOC complaints. ECF 42-5. Ensor denied the request. *Id.*

Plaintiff and Hughes, again, experienced difficulties working together on at least three assignments.[2] First, Plaintiff submitted a draft review memo for application 125147/202 in May, 2015. ECF 41-1 ¶ 19. Days later, Hughes made 26 comments to it, and Plaintiff responded to each of those comments. ECF 42-6 at 6–10. Hughes noted additional deficiencies in the review, and when Plaintiff continued to express disagreement, Ensor intervened and directed Plaintiff to follow Hughes's instructions. *Id.* at 1–5. The application was targeted for completion on June 15, 2015, but Hughes did not sign off on the review until September 1, 2015. ECF 41-1 ¶ 19.

Second, Plaintiff submitted a draft review memo for application CBE30 103234/5358 on June 12, 2015, just four days before the targeted completion date. ECF 42-7 at 5. Ensor informed Plaintiff that this submission did not leave enough time for Hughes to complete her review. *Id.* at 6–7. On the targeted completion date, Hughes made numerous comments and edits to the memo, and Plaintiff responded to the comments. *Id.* at 4–5. However, months later, Plaintiff learned that the application was reassigned to other reviewers and completed in September, 2015. *Id.* at 8.

---

[2] As the second reviewer of product applications, Hughes was responsible for ensuring that each review met the FDA's expectations. ECF 36-21 at 34:10–17. Meeting expectations required the first reviewer, Plaintiff, to make adjustments responsive to the second reviewer's comments. *Id.* at 34:18–35:2.

Third, Plaintiff submitted a draft review memo for application STN 125058/242 on November 6, 2015, almost one month before the targeted completion date. ECF 44-2 at 1. The next day, Hughes returned some edits and comments, which Plaintiff addressed in part. *Id.* at 1–2. Weeks later, Hughes conducted a second review with additional revisions because Plaintiff "missed the point of the submission." *Id.* at 4–5. Plaintiff sent several long emails expressing her disagreement and claiming that Hughes's second review injected 15 mistakes into the review.[3] *Id.* at 5–10. On November 30, Hughes provided additional clarification about why the review needed more work, to which Plaintiff again disagreed. *Id.* at 11–12. On December 1, Hughes directed Plaintiff to finalize the draft with the requested edits, which Plaintiff did the following day, but only after expressing to another supervisor that "[i]t appear[ed] that [Hughes] ha[d] little acceptance for different professional opinion." *Id.* at 13–14.

In addition to clashing over work product, Hughes and Plaintiff clashed over Plaintiff's requests for leave. On August 11, 2015, Plaintiff requested leave to visit her mother in China. ECF 41-5 at 1–2. Hughes asked Plaintiff to give updates on five outstanding assignments, which required completion before any granting of leave. *Id.* at 2–3. Plaintiff gave updates, but Hughes denied the leave request on August 26. *Id.* at 3. Plaintiff then elevated the request to Doleski, who promptly informed Plaintiff that he was not her leave-approving official. *Id.* at 4. After weeks of disagreements between Plaintiff and Hughes about the status of the assignments, Plaintiff again contacted Doleski for assistance in approving her leave request. *Id.* at 5–12. Plaintiff reported completing her assignments on September 9, *id.* at 10, and Hughes finally approved the request on September 14, the day before the scheduled trip. *Id.* at 13.

---

[3] Hughes later acknowledged that she inadvertently inserted typos into Plaintiff's work because she is a poor typist. ECF 36-6 at 151:8–152:10.

When Plaintiff returned from her trip, she faced another conflict with Hughes, this time about the approval of credit hours for extra time worked. On November 17, 2015, Hughes told Plaintiff that she did not have approval to earn credit time because she did not submit a blanket approval form. ECF 36-13 at 3. Hughes asked Plaintiff to correct her timesheets to remove credit hours. *Id.* at 2. Plaintiff challenged the reason for the blanket approval form requirement, and never corrected her timesheets. *See id.* at 4–7; ECF 36-3 at 79:16–21.

As a result of all these conflicts, in February, 2016, Hughes formally proposed that Plaintiff be suspended from employment. ECF 36-4. The proposal specified that Plaintiff did not complete assignments as instructed, failed to follow instructions about email communications for requesting leave, and failed to correct her timesheets. *Id.* at 2–3. On April 6, 2016, Ensor agreed with the proposal and suspended Plaintiff for 14 days. ECF 36-17. Plaintiff then filed her third EEOC complaint on June 2, alleging that the suspension was "just the latest in a series of retaliatory actions taken against" her. ECF 36-28 at 6. On September 6, she amended the complaint to add three other claims, ECF 36-30, which the FDA accepted for investigation, ECF 36-31.

Disagreements over work product continued through 2016. In March and April of that year, Hughes reassigned at least two of Plaintiff's reviews to other reviewers because Plaintiff failed to incorporate changes into the review or took too long to complete the review. *See* ECF 36-23 at 5– 6. Based on such issues, Hughes gave Plaintiff a 2016 performance summary rating of 2.2 out of 5.0 on June 21, 2017. ECF 36-18 at 2, 8. This score was a cumulation of Level 3 ratings on three critical elements and Level 1 ratings on two critical elements. *Id.* at 4–7. A month later, however, Hughes received an email notifying her that FDA policy required that anyone receiving a Level 1 rating for any critical element could not receive above a 1.99 summary score. ECF 36-19. Therefore, Hughes changed Plaintiff's score from 2.2 to 1.99 on August 2, 2017. ECF 36-18 at 2,

8. In response, Plaintiff filed her fourth EEOC Complaint on September 11, alleging that the score change, as well as the reassignments and revisions to her work, constituted acts of retaliation. ECF 36-33 at 2.

In December, 2016, the FDA and Plaintiff participated in a settlement conference about her first two EEOC complaints before an administrative law judge, who recommended that the FDA place her on a detail. ECF 36-26 at 13:11–14:21. The FDA followed that recommendation and detailed Plaintiff to another office in the agency. *Id.* In April, 2018, Plaintiff prevailed on certain claims in her first two complaints and asked to be returned from detail. *Id.* at 15:9–17. Jacquita Johnson-House, a management services officer, did not grant the request immediately because she believed that Plaintiff's relationship with Hughes was strained and so it was not in anyone's best interest to return Plaintiff from her detail. *Id.* at 8:4–10, 16:6–19. On May 30, 2018, Plaintiff filed her fifth EEOC complaint, alleging that Johnson-House's failure to grant Plaintiff's request was a retaliatory act. ECF 36-34 at 7. In August, 2018, the FDA returned Plaintiff from her detail. ECF 36-27 at 3.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the burden of showing that there is no genuine dispute of material facts. *See Casey v. Geek Squad Subsidiary Best Buy Stores, L.P.*, 823 F. Supp. 2d 334, 348 (D. Md. 2011) (citing *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987)). If the moving party establishes that there is no evidence to support the non-moving party's case, the burden then shifts to the non-moving party to proffer specific facts to show that a genuine issue exists for trial. *Id.* The non-moving party must provide enough admissible evidence to "carry the burden of proof in [its] claim at trial." *Mitchell*

6

*v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993). The mere existence of a scintilla of evidence in support of the non-moving party's position will be insufficient; there must be evidence on which the jury could reasonably find in its favor. *Casey*, 823 F. Supp. 2d at 348 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)). Moreover, a genuine issue of material fact cannot rest on "mere speculation, or building one inference upon another." *Id.* at 349 (quoting *Miskin v. Baxter Healthcare Corp.*, 107 F. Supp. 2d 669, 671 (D. Md. 1999)).

Summary judgment shall also be warranted if the non-moving party fails to provide evidence that establishes an essential element of the case. *Id.* at 352. The non-moving party "must produce competent evidence on each element of [its] claim." *Id.* at 348–49 (quoting *Miskin*, 107 F. Supp. 2d at 671). If the non-moving party fails to do so, "there can be no genuine issue as to any material fact," because the failure to prove an essential element of the case "necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Coleman v. United States*, 369 F. App'x 459, 461 (4th Cir. 2010). In ruling on a motion for summary judgment, a court must view all the facts, including reasonable inferences to be drawn from them, "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)).

### III.   ANALYSIS

Plaintiff alleges that her employer retaliated against her in violation of Title VII. Title VII retaliation can be established by direct evidence, or by the framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–05 (1973). *Foster v. Univ. of Md. – E. Shore,* 787 F.3d 243, 249 (4th Cir. 2015). Direct evidence "must demonstrate that an adverse employment action was actually due to [a protected activity] as opposed to some other lawful reason." *Sharif v. United*

7

*Airlines, Inc.*, 841 F.3d 199, 205 (4th Cir. 2016) (citation omitted). For example, comments made by a supervisor regarding an EEOC charge could be direct evidence. No direct evidence of retaliation is present in this case, therefore the *McDonnell Douglas* framework applies.

Under that framework, Plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996). A prima facie case requires "that (1) the plaintiff engaged in a protected activity . . . ; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Okoli v. City of Baltimore*, 648 F.3d 216, 223 (4th Cir. 2011) (citation omitted). It is undisputed that Plaintiff engaged in protected activity by filing five EEOC complaints. *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 656 (4th Cir. 1998). In her Amended Complaint, Plaintiff alleges four Counts of adverse actions taken in retaliation for her complaints: that (1) she was suspended for 14 days, (2) her 2016 performance review score was reduced from 2.2 to 1.99, (3) her supervisors reassigned and substantially revised her submitted work to create an appearance of poor work quality, and (4) her request to be returned from detail was denied. ECF 14 ¶¶ 31–38. In her opposition, Plaintiff adds a fifth adverse action: that (5) approval of her request for leave to visit China was deliberately delayed. Even assuming that these five actions constitute adverse actions, Plaintiff fails to state a prima facie case because she cannot causally connect any of them to any of her five EEOC complaints.

An employee may show a causal link between her protected activity and her employer's adverse action if the temporal proximity between the employer's knowledge of the protected activity and the adverse action is "very close[.]" *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x. 229, 233 (4th Cir. 2006) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 523 U.S. 268, 273 (2001)); *see also Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (finding that a

two-month temporal gap was not sufficiently close to establish causation). But such temporal proximity is lacking for all five actions. First, Plaintiff's 14-day suspension occurred in April, 2016, more than three years after she filed her first and second EEOC complaints in 2011 and 2013 respectively. ECF 36-17; ECF 41-2 ¶¶ 5, 9. Second, Plaintiff's 2016 performance review score was reduced on August 2, 2017, almost 11 months after her amended third EEOC complaint on September 6, 2016. ECF 36-18 at 2, 8; ECF 36-30. Third, the reassignments and revisions of Plaintiff's work mostly occurred from May, 2015, to April, 2016,[4] well *before* her amended third EEOC complaint in September, 2016 and well after her first and second complaints in 2011 and 2013. *See supra* Section I. Fourth, Plaintiff's request to be returned from detail was denied in April, 2018,[5] approximately eight months after she filed her fourth EEOC complaint in September, 2017. ECF 36-26 at 15:9–16:19; ECF 36-33 at 2. Fifth, approval of Plaintiff's leave request was delayed from August to September, 2015, one year *before* her amended third EEOC complaint in September, 2016 and many years after her first and second complaints in 2011 and 2013. These "lengthy time lapse[s] . . . negate[] any inference [of] a causal connection." *Dowe*, 145 F.3d at 657

Where the temporal proximity between the protected activity and the adverse action is insufficient, "courts may look to the intervening period for other evidence of retaliatory animus." *Lettieri v. Equant, Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (citation omitted). Plaintiff has not

---

[4] The Amended Complaint alleges that the reassignments and revisions occurred from November 2016 to September 2017, ECF 14 ¶ 35, but at the summary judgment stage, this Court must only consider the evidence in the record, which reflects that such actions only occurred *before* that time period.

[5] Although the detail began in December, 2016, this Court previously determined that it would only evaluate "Defendant's denial of Plaintiff's request to end her [ ] detail in April, 2018, and the resulting extension of that detail for approximately four months," because any claim related to Defendant's "pre-April 2018 conduct" was not administratively exhausted. *Tang v. Becerra*, No. 21-CV-2739, 2022 WL 4465899, at *5 (D. Md. Sept. 26, 2022).

presented any such evidence here. Therefore, she has not met her initial burden of establishing a prima facie case of retaliation.

Even if Plaintiff had presented such a case, she would still not survive summary judgment. Once a plaintiff establishes a prima facie case, the burden of production shifts to the employer to proffer legitimate, nondiscriminatory explanations for the adverse actions. *Guessous v. Fairview Prop. Investments, LLC*, 828 F.3d 208, 216 (4th Cir. 2016). If the employer meets that burden, the plaintiff must then show that the employer's proffered reasons are pretextual or her claims will fail. *Id.* A plaintiff can prove pretext by showing that the employer's explanation is "inconsistent over time, false, or based on mistakes of fact." *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 652 (4th Cir. 2021) (citation omitted).

Defendant has proffered legitimate, nondiscriminatory explanations for each of its five actions, and Plaintiff has failed to show that those explanations are pretextual. First, Plaintiff was suspended because she refused to follow Hughes's instructions about certain work, contacted Doleski about a leave issue, and did not correct her timesheets to remove her claimed credit hours. ECF 36-4 at 2–3. In her opposition, Plaintiff attempts to justify her behavior and disputes her employer's perception of how her job should be done, but she does not contest those underlying facts. *See* ECF 46 at 34–35 (arguing that Plaintiff was justified in seeking assistance from higher level management about her leave request, but admitting that she indeed sought such assistance). This Court has no reason to question the employer's perception of Plaintiff's performance. *See Sempowich* 19 F.4th at 652–53 (noting that courts, when determining whether an company's proffered reason is pretext for discrimination, "must defer to the company's business judgment with regard to legitimate criteria it chooses to measure successful employee performance").

Second, Plaintiff's 2016 performance score was reduced because FDA policy required that anyone receiving a Level 1 rating for any critical element could not receive a summary score above 1.99. ECF 36-19. Plaintiff does not contest the applicability of this policy. Third, Hughes's revisions to Plaintiff's work were either inadvertent mistakes or part of the regular review process. ECF 36-6 at 151:8–152:10; ECF 36-21 at 34:10–35:2. Again, Plaintiff attempts to justify her behavior and disputes the value of Hughes's revisions, but she does not contest that they were part of the review process. *See* ECF 46 at 32–34 (arguing that she disagreed with Hughes "in a polite and professional manner"). Fourth, Plaintiff's request to be returned from detail was denied because of the strained relationship between Plaintiff and Hughes. ECF 36-26 at 16:6–19. Plaintiff argues that this could not have been the true reason because by the time that she requested a return, she had already been separated from Hughes for over a year. ECF 46 at 36. But this argument does not create a genuine dispute of pretext because a lengthy separation is entirely consistent with a strained relationship. Fifth, Plaintiff's request for leave was not immediately approved because she had to complete her outstanding assignments. ECF 41-5 at 2. Plaintiff concludes instead that the delay was "mean-spirited," ECF 46 at 32, but does not dispute the underlying evidence showing that Hughes approved the request within days of Plaintiff's completing her assignments, ECF 41-5 at 2–13. In the absence of evidence of pretext, summary judgment must be granted.

## IV.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment, ECF 36, is GRANTED. A separate Order of Judgment follows.

Dated:  January 24, 2024                          /s/
                                         Stephanie A. Gallagher
                                         United States District Judge

11